Reid A. Winthrop (SBN 223527)
**WINTHROP LAW GROUP, P.C.**
120 Newport Center Dr.
Newport Beach, California 92660
Phone:  949-269-3256 | Fax:  949-209-1919
Email: *reid@winthroplawgroup.com*

Attorneys for Plaintiff NEUROPATHY SOLUTIONS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| NEUROPATHY SOLUTIONS, INC. dba SUPERIOR HEALTH CENTERS,<br><br>Plaintiff,<br><br>vs.<br><br>MASSACHUSETTS BAY INSURANCE COMPANY,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1) **BREACH OF INSURANCE CONTRACT – DUTY TO DEFEND**<br><br>2) **BREACH OF INSURANCE CONTRACT – DUTY TO INDEMNIFY**<br><br>3) **TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

## GENERAL ALLEGATIONS

1. In this insurance coverage and bad faith case, Plaintiff Neuropathy Solutions, Inc. dba Superior Health Centers ("Neuropathy") alleges that Defendant Massachusetts Bay Insurance Company ("MBIC") unreasonably and without basis breached its duties, including the duty to defend and indemnify, and the duty of good faith and fair dealing, under the commercial general liability policy issued to management services organization (MSO) Neuropathy.

2. Neuropathy alleges that MBIC failed to investigate prior to initially denying Neuropathy's claim for defense of the underlying *Bernal* action in the first instance.

3. Neuropathy alleges that MBIC further failed to investigate once it reversed its adverse claim decision, and improperly and unreasonably, and without any investigation, sought reimbursement of defense fees and costs, and $2,000,000 in indemnity dollars paid to settle the underlying *Bernal* action.

4. Neuropathy further alleges that MBIC improperly and unreasonably controlled the defense of the *Bernal* action, without proper disclosures under California Civil Code Section 2860, and improperly and unreasonably, and with malice, oppression and fraud, halted the deposition of Neuropathy's corporate representative for the purpose of preventing testimony from being placed on the record which would have revealed coverage, with the knowledge of its intent to seek reimbursement from Neuropathy based solely on allegations, not discovered facts, which was concealed from Neuropathy until the policy limits demand was accepted by MBIC.

5. At the time MBIC was controlling the defense, and halted the deposition, MBIC had filed suit for declaratory relief against Neuropathy in the Central District of California, entitled *Massachusetts Bay Insurance Company v. Neuropathy Solutions Inc. dba Superior Health Centers, et al.,* Case No. 8:21-CV-00607-DOC-JDE ("MBIC Action"), and had an obligation to relinquish control of the defense, and provide proper Section 2860 disclosures, and failed to do so.

6. MBIC filed the MBIC Action without conducting any investigation into coverage, and in fact controlling the defense to prevent discovery that would have revealed actual coverage.

7. Following unilateral acceptance of the policy limits demand MBIC while concealing its intent to seek reimbursement, MBIC improperly and unreasonably provided belated notice to Neuropathy of its intent to seek reimbursement, and filed an amended complaint in the MBIC Action for reimbursement of defense fees and indemnity dollars of over $2,000,000, and rushed to file a dispositive motion for summary judgment before any discovery could be taken.

8. On February 9, 2022, the court in the MBIC Action denied MBIC's motion for judgment on the pleadings, and granted Neuropathy's cross-motion for judgment on the pleadings concluding that "MBIC was obligated to defend Neuropathy, and Neuropathy has no obligation to reimburse MBIC for its defense," and dismissed all claims against Neuropathy, with prejudice.

9. Neuropathy now files suit for confirmation that MBIC breached its duties to defend and indemnify Neuropathy, by first failing and refusing to defend Neuropathy in the underlying *Bernal* action, and then unreasonably and without basis breached the policy by failing and refusing to fully indemnify Neuropathy for settlement of the *Bernal* action by improperly and unreasonably seeking reimbursement of paid settlement and defense funds, which, along with the failure to investigate and other unreasonable conduct set forth herein, triggers bad faith liability and damages.

## THE PARTIES

10. Plaintiff Neuropathy Solutions, Inc. dba Superior Health Centers ("Neuropathy") is a corporation organized under the laws of the State of California with its principal place of business in Irvine, California. Neuropathy is a citizen of California.

11. Defendant Massachusetts Bay Insurance Company is a corporation organized under the laws of the State of Massachusetts, with principal offices in

Massachusetts. MBIC is a citizen of Massachusetts.

## JURISDICTION

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Neuropathy and MBIC and there is more than $75,000 is in controversy in this action.

## VENUE AND APPLICABLE LAW

13. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(a)(3) in that Neuropathy has its principal place of business in this District, and MBIC filed suit against Neuropathy in the preceding declaratory relief action in this Court.

14. The MBIC insurance policy at issue was sold by MBIC in this District and was purchased with the expectation that it would cover Neuropathy's operations in California, including in this District.

15. MBIC issues insurance policies in California, including in this District. MBIC has sufficient contacts with California to be subject to personal jurisdiction in this District if it were a separate state.

16. MBIC does, on information and belief, file and defend lawsuits in California, including in this District, including against Neuropathy.

17. This District is the place of performance and making of the policy and California law governs MBIC's obligations to Neuropathy.

## THE MBIC INSURANCE POLICY AND EXCLUSION

18. Plaintiff Neuropathy alleges that Defendant MBIC issued a commercial general liability to Neuropathy, policy number OD3-D903901-00, for the policy period of May 1, 2019, to May 1, 2020 (the "Policy", attached hereto as Exhibit 1). The policy liability limits are $2,000,000 per occurrence.

19. SECTION II – LIABILITY is the applicable coverage section. The Policy's Liability section includes an insuring agreement that states in relevant part:

**A. Coverages**

    **1. Business Liability**

        **a.** We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result.

(Policy, p. 59 of 81).

        **b.** This insurance applies:

           (1) To "bodily injury" and "property Damage" only if:

              (a) The "bodily injury" or "property Damage" is caused by an "occurrence" that takes place in the "coverage territory";

           (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

(Policy, p. 60 of 81).

20. The Liability section of the Policy contains the following relevant definitions:

    3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".
(Policy, p. 74 of 81).

    13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
(Policy, p. 76 of 81).

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

h. "Discrimination" (unless insurance thereof is prohibited by law) that results in injury to the feelings or reputation of a natural person, but only if such "discrimination" is:

(1) Not done intentionally by or at the direction of:

(a) The insured;

(b) Any officer of the corporation, director, stockholder, partner or member of the insured;

"Discrimination" means the unlawful treatment of individuals based upon race, color, ethnic origin, gender, religion, age, or sexual preference. "Discrimination" does not include the unlawful treatment of individuals based upon developmental, physical, cognitive, mental, sensory or emotional impairment or any combination of these.

(Policy—Special Broadening Endorsement, p. 4 of 6)

21. The MBIC policy expressly excludes coverage for claims based on professional services:

**B. Exclusions**

   **1. Applicable to Business Liability Coverage**

      **j. Professional Services**

"Bodily injury", "property damage", "personal and advertising injury caused by the rendering of or failure to render any professional service, advice or instruction:

(1) By you; or

(2) On your behalf; or

(3) From whom any of you assumed liability by reason of a contract or agreement, regardless of whether any such service, advice or instruction is ordinary to any insured's profession.

Professional services include but are not limited to:

(8) Any health or therapeutic service treatment, advice or instruction;

This exclusion applies even if a claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

(Policy, p. 65-66 of 81).

**NEUROPATHY'S MANAGEMENT SERVICES AGREEMENT ("MSA")**

22. On or about April 25, 2019, Neuropathy entered into the Management Services Agreement ("MSA") with Elite Medical Group, PC ("EMG").[1]

23. The first recitation in the MSA states that "EMG operates a medical practice that provides regenerative medicine services to patients (the 'Practice')." (*Id.*) The second recitation indicates that Neuropathy intends to provide management services, "including billing, collections, acquisition of phone numbers and related telecommunication services, marketing support, the leasing or subleasing of space and equipment, utilities, communications, and other related business administrative services." (*Id.*) The first paragraph of the MSA states:

**1.    Recitals.** The parties hereto acknowledge that the foregoing recitals are true, correct and complete with respect to the subject matter thereof, and the same are hereby incorporated herein as a substantive part of this agreement.

24. The MSA continues, stating at:

Paragraph 2.1 states in pertinent part, "EMG shall be solely and exclusively in control of all aspects of the delivery and provision of professional services at the Practice. The rendering of all professional services including, but not limited to, diagnosis, treatment, therapy, and the supervision and preparation of all professional reports shall be the responsibility of EMG. Manager shall have no authority or obligation whatsoever with respect to the performance of clinical or professional services provided by the Practice."

---

[1] A true and correct copy of the MSA is attached hereto as Exhibit 2.

25.  This intent is further evidenced throughout the MSA, e.g., Paragraph 12.1:

> 12.  **Intent of the Parties; Change in Law**.
>> 12.1.  **Scope of Services Provided by the Manager**. Neither the Manager nor any of its personnel shall undertake or be deemed to undertake any professional practice or provide any professional services or professional advice to EMG or its patients in the performance of services and other obligations under this Agreement or to control the practice of a professional or to control the professional judgment of any professional…

### THE BERNAL COMPLAINT

26. On or about September 9, 2020, Rigoberto Bernal and Marilena Bernal (hereinafter, the "Bernals") filed suit in Riverside Superior Court against several defendants, including Neuropathy, in a complaint phrased in five causes of action ("Bernal Complaint") for (1) Negligence – Medical Malpractice, (2) Negligence – Failure to Warn, (3) Loss of Consortium, (4) Financial Elder Abuse, and (5) Fraud.[2] (defined herein as the "*Bernal* action")

27. The Bernal Complaint alleged, "This complaint arises from a series of recklessly administered injections Mr. Bernal received that nearly killed him and left him paralyzed from the waist down." (Complaint at ¶ 1.) The Complaint alleges, "In or around September 2019, Mr. Bernal attended an 'informational sales pitch' from [Neuropathy] wherein he was informed that stem cell injections would cure pain and mobility limitations in his knees." (*Id.* at ¶ 14.) Further at the " 'informational sales pitch' in September of 2019, representatives of Superior Health Centers [Neuropathy], who were not medical professionals, falsely informed Mr. Bernal they had many licensed doctors under their employ and that a single stem cell injection would permanently cure his pain." (*Id.* at ¶ 15.) It was alleged that Dr. Highshaw, through his professional corporation, Elite Medical Group, PC, was supposed to facilitate and

---

[2] A copy of the Bernal Complaint is attached hereto as Exhibit 3.

oversee the injections. (*Id.* at ¶ 16.).

## THE BERNAL FIRST AMENDED COMPLAINT

28. On or about April 14, 2021, Bernals filed a First Amended Complaint ("Bernal FAC") phrased in 10 causes of action for (1) Negligent Misrepresentation, (2) Negligence – General, (3) Negligence Per Se, (4) Financial Elder Abuse, (5) Fraud, (6) Negligence – Medical Malpractice, (7) Negligence – Failure to Warn, (8) Loss of Consortium, (9) California Business & Professions Code § 17200, et seq., and (10) California Business & Professions Code § 17500, et seq.[3]

29. The Bernal FAC alleged that Neuropathy performed management and administrative services in support of EMG's professional services causing injury and damage to Bernal.

30. The Bernal FAC alleged, "This complaint arises from a series of falsely advertised, recklessly administered, non-FDA approved 'stem cell' injections Mr. Bernal received that nearly killed him and left him a permanent paraplegic from the waist down." (Bernal FAC at ¶ 1.) The FAC further alleged, "[Neuropathy] is a company that creates false and misleading advertisements for medical services and products and markets them directly to consumers… (*Id.* at ¶ 2.) The Bernal FAC makes clear that the allegations against Neuropathy are not that Neuropathy performed the injections. (See, *Id.* at ¶¶ 1-6, 10, 26, 27, 33-36, 46.) However, it does allege that Neuropathy performs administrative tasks that result in bodily harm to consumers, including signing the consumer up for seminars, and "sending" the consumer to unqualified medical providers. (*Id.* at ¶ 3, 26, 27.)

31. The Bernal FAC also alleges that Neuropathy "created a series of targeted, false and misleading advertisements stating that 'stem cell' treatments would cure Mr. Bernal of knee pain." (*Id.* at ¶ 4.) Mr. Bernal relied upon Neuropathy's allegedly "deceptive advertisements," and thereafter spoke with Neuropathy's "non-professional

---

[3] The Bernal FAC is attached hereto as Exhibit 4.

sales employees." (*Ibid*.) Neuropathy's employees and agents are alleged to have deceived Mr. Bernal, both in writing and via verbal representations. (*Id.* at ¶¶ 4-6.) Neuropathy is alleged to have "negligently passed on the task of performing Mr. Bernal's injections to Elite Medical Group…" (*Id.* at ¶ 10.) The crux of the allegations against Neuropathy is Neuropathy's negligence in creating an alleged deceptive "sales pitch", as well as the negligent "sending" of consumers, including Bernal, to EMG (*Id.* at ¶ 26, 27, 28, 3.)

32. Neuropathy is also alleged to provide "management" services, including but not limited to "marketing and advertising, acquiring clients/patients, billing, facilitating third-party financing, renting office space, and other non-medical/non-professional services." (*Id.* at ¶ 33.) "[T]he rendering of any medical care is to be done solely by Elite Medical Group and its employees under the purported supervision of Defendant [Dr.] Highshaw." (*Ibid*.) Neuropathy and Elite Medical Group are alleged to have entered into a Management Services Agreement, under which Neuropathy "provides all non-licensed staff that support, but do not deliver, the provision of the medical services by Elite Medical Group," and "shall not include services which related to the providing of professional services." (*Id.* at ¶¶ 34-36.) Neuropathy got Mr. Bernal "in the door" (i.e., an administrative and management task) after which Elite Medical Services performed the medical procedure(s). (*Id.* at ¶ 46.) Neuropathy "is not qualified to, nor can it, provide medical services to consumers." (*Id.* at 32.)

## THE MBIC/HANOVER DENIAL

33. On or about October 15, 2020, MBIC, defining itself as "Hanover", responded to Neuropathy's tender, stating, "Based on our investigation, it is Hanover's position that there is no potential for coverage for this claim under the Hanover policy. As such, Hanover is declining all coverage obligation, both defense and indemnity, for this claim."[4]

---

[4] The October 15, 2020 letter is attached hereto as Exhibit 5.

34. MBIC/Hanover acknowledged that the applicable policy is OD3-D903901-00 with effective dates of May 1, 2019 through May 1, 2020, and cited the Professional Services Exclusion ("PS Exclusion") as the basis for denial of coverage.

35. MBIC/Hanover succinctly states its coverage position: "It is the position of Hanover there is no coverage under the policy. Although [Neuropathy] makes a claim for 'bodily injury' or 'property damage' cause by an 'occurrence' as those terms are defined by the policy. The above exclusion as to professional services would preclude coverage for this matter." (*Id.*)  MBIC/Hanover does not seek to deny coverage under any other provision of the Policy.

36. As such, MBIC/Hanover declined all coverage obligations, both defense and indemnity, for this claim.

**THE MBIC/HANOVER RESERVATION OF RIGHTS ("ROR") LETTER**

37. On January 21, 2021, Neuropathy provided MBIC with a copy of the MSA.

38. In late February of 2021, MBIC made a determination that the Bernal claims were potentially covered under the Policy, and that the PS Exclusion did not bar coverage based upon the MSA (i.e., the ROR).

39. Therefore, on February 25, 2021, MBIC reversed its decision and agreed to defend Neuropathy under a reservation of rights. The ROR letter was drafted and sent by counsel for MBIC.[5]

40. Neuropathy alleges that in the MBIC Reservation of Rights ("ROR"), MBIC stated, "However, as part of your request for reconsideration of MBIC's coverage position, on January 21, 2021 you provided MBIC with a copy of a Management Services Agreement ("MSA") between Neuropathy and EMG, effective 4/25/19. To the extent that the MSA supports your claim that Neuropathy is only providing administrative services, and not 'professional services' subject to the professional services exclusion, MBIC hereby agrees to defend Neuropathy in the Bernal action

---

[5] The February 25, 2021 letter is attached hereto as Exhibit 6.

under a full reservation of rights. MBIC understands Neuropathy's contention to be that Mr. Bernal was not under the 'care and treatment' of Neuropathy despite this express allegation."

41. The MSA was the primary factor considered in MBIC's reversal and agreement to defend (and ultimately indemnify) Neuropathy.

42. Nowhere in the ROR does MBIC indicate that it intends to seek reimbursement from Neuropathy for either defense fees and/or indemnity contributions.

43. MBIC's express failure to notify its insured that it would be seeking reimbursement of attorney's fees and/or indemnity money paid by MBIC on behalf of Neuropathy before agreeing to settle the case barred MBIC from seeking reimbursement at a later date, absent other timely disclosures.

## MBIC FAILED TO INVESTIGATE

44. Following the reversal of the adverse coverage decision in the February 25, 2021 ROR letter, MBIC appointed defense counsel to defend Neuropathy, and MBIC assumed control over the defense of Neuropathy to the Bernal FAC.

45. MBIC advised Neuropathy of its right to independent counsel under Civil Code 2860, but did not advise Neuropathy of its right to control the defense in light of the ROR and inherent and actual conflict between the interests of Neuropathy, and those of MBIC.

46. MBIC thereafter appointed defense counsel, Deborah DeBoer, to handle the defense of the *Bernal* action, and thereafter controlled the defense of the action.

47. MBIC did not perform any further investigation as to the allegations in the Bernal FAC.

48. MBIC did not instruct its appointed counsel to conduct discovery.

49. MBIC made no effort to determine whether the allegations in the Bernal FAC against Neuropathy were accurate, or gave rise to actual coverage under the Policy.

50.Instead, on March 31, 2021, MBIC filed the MBIC Action against Neuropathy for declaratory relief seeking a determination whether MBIC had a duty to defend Neuropathy under the Policy.

## THE SETTLEMENT

51.On May 12, 2021, the Bernals were engaged in conducting the deposition of Neuropathy's designated corporate representative (i.e., PMK). MBIC instructed its defense counsel, Deborah deBoer, to halt the deposition, and to accept the Bernals' policy limits demand for $2,000,000, which she did. Neither MBIC nor its appointed counsel informed Neuropathy of its rights prior to accepting the settlement demand, nor did MBIC nor its appointed counsel advise Neuropathy of MBIC's intent to seek reimbursement of any settlement funds.

52.As of May 12, 2021, MBIC had therefore reached a settlement on behalf of Neuropathy with the plaintiffs in the *Bernal* action for $2,000,000 by acceptance of the Bernals' policy limits demand.

53.On or about May 12, 2021, appointed counsel for MBIC sent a release agreement to Neuropathy's retained defense counsel to finalize settlement of the *Bernal* action.  MBIC advised its retained counsel, "We are going to accept the 998, because the risk of rejecting it is too high."[6]

54.On or about May 13, 2021, MBIC sent Neuropathy's counsel a follow up letter advising that the Bernal action had been settled. Per MBIC:

"Yesterday afternoon (May 12, 2021), Neuropathy's defense counsel Deborah deBoer suspended the deposition of the person most knowledgeable for Neuropathy based on a settlement in principle for $2,000,000 subject to a settlement agreement and MBIC's final approval."[7]

55.Neuropathy alleges that the May 13, 2021 letter is an intentionally false representation of events intended to deceive Neuropathy, and was drafted and sent for

---

[6] The May 12, 2021 letter with the Release is attached hereto as Exhibit 7.

[7] The May 13, 2021 letter is attached hereto as Exhibit 8.

the purpose of deceiving others. Ms. DeBoer was defense counsel appointed and controlled by MBIC, not Neuropathy, and she was instructed by MBIC, not Neuropathy, to halt the deposition and accept the policy limits demand.

56. In addition, the acceptance of the $2,000,000 policy limits demand was not "in principle" subject to "MBIC's final approval" since it was MBIC, the insurer, who accepted the demand and agreed to pay the policy limits, per MBIC's rights under the Policy. No other approval was necessary, and any settlement agreement was a mere formality following acceptance of the policy limits demand by MBIC.

57. Neuropathy further alleges that the settlement was not subject to Neuropathy's final approval since once MBIC instructed its appointed counsel to halt the deposition of Neuropathy's principal, and accept the policy limits demand to settle by the Bernals on May 12, 2021, the settlement was done. Any attempt by Neuropathy to undo the settlement would not have been effective, and would have resulted in the Bernals filing a motion to enforce the settlement, and would have embroiled Neuropathy in further litigation over MBIC and its appointed counsel's acceptance of the policy limits demand.

58. In its post-settlement letter confirming that the matter had settled, MBIC cited for the first time to *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489 for the proposition that an insurer can pay a settlement and seek reimbursement of the non-covered claims if it complies with certain prerequisites, including "an express notification to the insureds of the insurer's intent to accept a proposed settlement offer." (*Id.*)

59. Neuropathy alleges that there is no evidence – because none exists – that MBIC gave notice of its intent to seek reimbursement for defense fees or costs, and certainly not for the settlement until the May 13, 2021, post-settlement letter to Neuropathy.

60. Upon information and belief, between February 25, 2021 (the Hanover Reservation of Rights) and May 12, 2021 (the Settlement agreement), nothing

13

happened substantively in the *Bernal* action to cause MBIC to reverse its position again on coverage. Indeed, MBIC failed to identify any new evidence or information that led to its decision to seek reimbursement.

61. Upon information and belief, if none of the claims in the *Bernal* action were potentially covered and/or if the PS Exclusion precluded coverage in October 2020, then there was no basis for MBIC to reverse course on February 25, 2021, in the ROR.

62. However, the MSA was new evidence that caused a reversal and MBIC's finding of a potentially covered claim based on the MSA.

63. Similarly, if the claims in the *Bernal* action were potentially covered as determined by MBIC in the ROR, then there was no basis for reversing and seeking reimbursement unless new evidence came to light. However, MBIC failed to conduct any investigation, or take any discovery, and affirmatively prevented the discovery of new facts, and therefore cannot identify anything that it learned between February 25, 2021, and May 12, 2021 that would have altered MBIC's position.

64. Neuropathy alleges that once MBIC accepted coverage in the ROR, MBIC had every opportunity to approach Neuropathy and to indicate that MBIC believed liability would be found solely on uncovered claims, which would have allowed Neuropathy to conduct discovery to prove that Bernals were seeking liability on covered claims, and vice versa. On the contrary, MBIC simply accepted and controlled the defense and, without more information or conducting any investigation or discovery, rapidly and abruptly settled the case, and *then* gave notice of intent to seek reimbursement for claims that just two months prior, MBIC had advised Neuropathy had at least a potential for coverage.

65. Neuropathy alleges that by the ROR, Neuropathy had a reasonable expectation that MBIC was not seeking to disclaim all coverage but instead may seek to deny coverage for the non-covered claims in the event of the discovery of new evidence or a judgment on the non-covered claims.

66. Upon information and belief, MBIC accepted and controlled the defense

14

with appointed counsel, chose to cut off any additional discovery, and unilaterally agreed to settle the case for $2 000,000, concealing from Neuropathy its intent to seek reimbursement for any settlement funds paid on behalf of Neuropathy.

## THE DECLARATORY RELIEF ACTION

67. On March 31, 2021, MBIC filed an action in the Central District of California for declaratory relief for a determination of its duty to defend under the Policy. (defined herein as the "MBIC Action".)

68. On August 13, 2021, MBIC filed its Second Amended Complaint ("MBIC SAC"), seeking reimbursement for payment of defense fees and costs, and for indemnity paid in the amount of $2,000,000.

69. MBIC argued in its MBIC SAC, as it did in its May 13, 2021 letter to Neuropathy, that all claims, even those MBIC determined to be potentially covered, were not even potentially covered.

70. Neuropathy alleges MBIC's position, taken first in its May 13, 2021 letter, was not only untenable but unreasonable and asserted in bad faith.

71. Upon information and belief, without further investigation and without any additional discovery of facts, there was nothing that later revealed that there was no potential for coverage. MBIC has never answered what new information or evidence was discovered after February 2021, which made MBIC to change its decision that led to seek reimbursement.

72. Neuropathy alleges that MBIC intentionally cut off discovery to enter into a settlement in the *Bernal* action.

73. Neuropathy alleges that MBIC hastily "suspended" the deposition of Neuropathy's principal to settle the *Bernal* action before additional facts would be revealed, and placed in the record, that would demonstrate actual coverage under the Policy.

74. Neuropathy alleges that MBIC knew that the claims set forth in the Bernal FAC were covered. MBIC was solely responsible for settlement and that it needed to

effectuate settlement as quickly as possible, and therefore controlled the defense to prevent the revelation of additional facts.

75. The Bernal claims were covered by the Policy, and MBIC had no basis to deny coverage, or seek reimbursement.

76. On February 9, 2022, the Central District of California, Judge David O. Carter presiding, issued its Order denying MBIC's motion for judgment on the pleadings, and granting Neuropathy's motion for judgment on the pleadings, finding that there was a potential for coverage for the *Bernal* action under the Policy, and that MBIC was not entitled to reimbursement of defense fees and costs paid, nor entitled to reimbursement for the $2,000,000 settlement payment. ("MJP Order")[8]

77. Typically, an insurer will reserve rights to later deny coverage if there are later-discovered facts that remove claims from coverage and/or if liability is found on the non-covered claims. An insurer may defend both covered and non-covered claims, and if liability is found on the non-covered claims, then the insurer may seek reimbursement on the non-covered claims.

78. Upon information and belief, there was no further investigation nor discovery nor was there a judgment, and therefore nothing that would lead MBIC to conclude it had any basis to seek reimbursement from Neuropathy for the settlement.

79. Upon information and belief, there was no further investigation nor discovery taken, particularly as to the non-covered claims. In fact, MBIC stopped the deposition of Neuropathy's principal, the only chance to obtain evidence that could be used to evaluate coverage.

80. On information and belief, there was no reason for MBIC to accept the settlement in the manner in which it did, under the stated timeline.

81. Neuropathy alleges that the timing of the MBIC's decision was more than curious, raising the possibility that MBIC had an ulterior motive.

---

[8] The Order is attached hereto as Exhibit 9.

82. On information and belief, MBIC did not want Neuropathy's principal to testify as to the services actually performed by Neuropathy, which would have further revealed actual coverage, and would have locked MBIC into payment in full for defense fees, costs, and any future settlement. Or, possibly, MBIC's counsel simply did not believe there was any basis to seek reimbursement, only to have MBIC reconsider the following day.

83. Upon information and belief, there were no timing issues, MBIC could have allowed the deposition to proceed, conducted additional discovery, etc., prior to accepting the Bernals' policy limits settlement demand.

84. Neuropathy alleges that MBIC unilaterally stopped the deposition, and unilaterally agreed to settle, without advising Neuropathy of its intent to settle before actually agreeing to settle *Bernal* action.

85. On information and belief, MBIC unreasonably failed and refused to participate in further defense of Neuropathy.

86. On information and belief, MBIC unreasonably chose to settle of the *Bernal* action instead to a "wait and see" approach to the outcome of the deposition, additional discovery, trial, putting its own financial interests above those of its insured Neuropathy.

87. Neuropathy performed all obligations under the Policy. MBIC, on the other hand, breached the Policy and its duties thereunder as set forth herein above, unreasonably and in breach of MBIC's duty of good faith and fair dealing.

### FIRST CAUSE OF ACTION

### Breach of Insurance Contract – Duty to Defend

88. Neuropathy incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

89. Neuropathy fully performed all of the obligations and conditions to be performed by it under the Policy.

90. Under California law, the duty to defend, as well as the duty to indemnify

17

for defense costs, is much broader than the duty to indemnify. An insurer must defend its insured, or indemnify for defense costs, if the underlying complaint alleges the insured's liability for damages potentially covered under the policy.

91. Once the insured establishes potential liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured intends to rely, the insurer must immediately assume its duty to defend, or agree to indemnify for defense costs, unless and until it can conclusively refute that potential. Any doubt as to whether the facts establish or defeat the existence of the defense duty must be resolved in the insured's favor.

92. The Bernals sought damages in the *Bernal* action potentially within the coverage of the Policy not otherwise excluded.

93. MBIC breached the Policy by failing and/or refusing to immediately and fully agree to defend Neuropathy in the *Bernal* action, and then by improperly controlling the defense, and then by improperly and unreasonably seeking reimbursement for defense fees and costs in the MBIC Action.

94. On February 9, 2022, MBIC's breach was confirmed by the Central District of California when it issued its MJP Order granting Neuropathy's motion, and finding that there was a potential for coverage under the Policy, and that MBIC had no right to reimbursement.

95. Under California law, Defendant MBIC had a duty to investigate, with any eye towards coverage, and not against. An insurance company acts unreasonably or without proper cause if it fails to conduct a full, fair, and thorough investigation of all the bases of the plaintiff's claim. (*Jordan v. Allstate Ins. Co.,* 148 Cal.App.4th 1062, 1066. (2007).)

96. Defendant MBIC breached the Policy by failing and/or refusing to conduct a reasonable and proper investigation into the claims of the Neuropathy, by refusing to defend, and then by seeking reimbursement for defense fees and costs.

97. Defendant MBIC failed to search for and consider evidence that supports

18

coverage for Plaintiff's claim. Defendant MBIC closed its eyes to evidence that supports coverage and focused solely on the evidence that denies coverage, including by abruptly terminating the deposition of Neuropathy's corporate representative before substantive testimony could be taken, by controlling the defense, and not taking any discovery in the *Bernal* action.

98. As a direct result of MBIC's breach, Neuropathy suffered damages, including but not limited to unreimbursed investigation and defense fees and costs under the Policies, attorneys' fees including those incurred in the MBIC Action, and other economic and consequential damages in excess of this court's unlimited diversity jurisdiction, including pre-judgment interest and costs.

### SECOND CAUSE OF ACTION

### Breach of Insurance Contract – Duty to Indemnify

99. Neuropathy incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

100. Neuropathy performed each and every obligation and satisfied every condition required under the Policy not otherwise excused or waived.

101. Defendant MBIC accepted and controlled the defense with appointed counsel, chose to cut off any additional discovery, and unilaterally agreed to settle the case for $2,000,000.

102. Defendant MBIC failed to identify new information or evidence that it discovered between February 25, 2021, and May 12, 2021, that changed MBIC's position in the *Bernal* action.

103. Defendant MBIC now argues that all claims, even those MBIC determined to be potentially covered, are not even potentially covered, and are not actually covered under the Policy, and therefore MBIC argues it has a right to seek reimbursement of paid settlement funds.

104. MBIC breached the Policy by improperly and unreasonably seeking reimbursement of $2,000,000 in indemnity dollars paid on behalf of Neuropathy in

19

connection with the *Bernal* action.

105.   On February 9, 2022, the Central District of California issued its MJP Order granting Neuropathy's motion, and finding that there was a potential for coverage under the Policy, and that MBIC had no right to reimbursement. MBIC has appealed the MJP Order and judgment against it, and continues to seek reimbursement, in breach of the Policy.

106.   As a direct result of MBIC's breach and continuing breaches, Neuropathy suffered damages, including but not limited to unreimbursed investigation and defense fees and costs under the Policy, attorneys' fees including those incurred in the MBIC Action, and other economic and consequential damages in excess of this court's unlimited diversity jurisdiction, including pre-judgment interest and costs.

## THIRD CAUSE OF ACTION

### Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)

107.   Neuropathy incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

108.   In every insurance policy there is a duty of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement. To fulfill its implied duty of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests. An insurer breaches the implied duty of good faith and fair dealing if it unreasonably or without proper cause acts or fails to act in a manner that deprives the insured of the benefits of the policy.

109.   California Code of Regulations, Title 10, Chapter 5, subchapter 7.5, incorporates as unfair claims practices the edicts promulgated in California *Insurance Code* § 790.03(h), known as the California Unfair Claims Practices Act. Under California law, the Insurance Code and these Regulations are a codification of the

tortious breach of the duty of good faith and fair dealing as applied to the business of insurance. While it is true that no private right of action is available for breach of these statutory and regulatory standards, they are admissible at trial and properly set forth the minimum standard of care and duties that an insurer owes its insured in investigating and handling an insurance claim. (*Jordan v. Allstate Insurance Co.*, 148 Cal. App. 4th 1062, 1077-1078 (2007).)

110.   California law imposes a duty of good faith and fair dealing with respect to the insurer's (1) duty to communicate, (2) duty to investigate, (3) duty to fairly interpret policy provisions so as to favor coverage rather than to forfeit coverage, and (4) duty to settle. An insurer's belief in noncoverage is not a permissible consideration in evaluating whether to settle an action on behalf of its insured. (*Howard v. American Nat'l Fire Ins. Co.,* 187 Cal.App.4th 498, 530-531 (2010).)

111.   An insurer breaches the standards set under California Insurance Code § 790.03(h) and the Code of Regulations when it "knowingly" commits an act which breaches one of the sections, thereby breaching its duty of good faith and fair dealing.

112.   "Knowingly committed" means "performed with actual, implied or constructive knowledge, including, but not limited to, that which is implied by operation of law." Regulations § 2695.2(l).   "Willful" or "willfully" means "when applied to the intent with which an act is done or omitted means simply a purpose or willingness to commit the act, or make the omission referred to in the California Insurance Code, or this subchapter. It does not require any intent to violate the law, or to injure another, or to acquire any advantage." Regulations § 2695.2(y). Accordingly, an insurer willfully breaches its duties by failing to perform a required act, and that act does not require any specific intent to violate the law or to injure the insureds or to take advantage of them.

113.   It is bad faith for a carrier to focus its investigation solely on evidence that might avoid or eliminate coverage. California courts have consistently held that in order to perform a reasonable and proper investigation, insurance companies should

neither selectively choose which facts to investigate nor should they ignore contrary information which may support the insured's claim. (*Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 720-21 (2007).) "When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim. If it seeks to discover only the evidence that defeats the claim it holds its own interest above that of the insured." (*Mariscal v. Old Republic Life Ins. Co*., 42 Cal.App.4th 1617, 1620 (1996); *Wilson*, 42 Cal.4th at 721 ["the insurer may not just focus on those facts which justify denial of the claim"]; *Armas v. USAA Cas. Ins. Co.,* 2019 WL 3333279, at *6 (N.D.Cal. July 24, 2019) [If an insurer ignores evidence that supports coverage, "it acts unreasonably toward its insured and breached the covenant of good faith and fair dealing."].)

114.  Defendant MBIC acted in bad faith when it failed to investigate Plaintiff's claim. Not only did MBIC not search for evidence of coverage, it prevented the true facts from being revealed when it instructed its appointed counsel to abruptly terminate the deposition of the Neuropathy corporate representative on May 12, 2021.

115.  Defendant MBIC acted in bad faith when (1) it put its own interests above those of its insured Neuropathy; (2) MBIC failed to investigate, and actively prevented discovery, and concealed its intent from Neuropathy; (3) MBIC failed to relinquish control over the defense, as set forth herein, and in fact controlled the defense and settlement of the case; and (4) MBIC raced to settle and seek reimbursement before the true facts could be discovered, while concealing from Neuropathy its intent to seek reimbursement.

116.  Defendant MBIC's failure to conduct a full and fair investigation, its affirmative act of cutting off discovery for the sole purpose of stopping the revelation of facts that would reveal coverage, and then seeking reimbursement while refusing to investigate facts that would reveal coverage, and then seeking reimbursement based on an incomplete investigation focusing solely on facts that benefitted MBIC, is bad faith.

117.   Defendant MBIC unreasonably and without just cause breached its duty of good faith and fair dealing to communicate, to investigate, to interpret the Policy with an eye toward coverage, and to indemnify Neuropathy in the *Bernal* action without seeking reimbursement in the manner in which it did. Specifically, MBIC engaged in a course of conduct to further its own economic interests in disregard of these obligations to Neuropathy under the Policy.

118.   On information and belief, MBIC refused to participate in further defense and settled the *Bernal* action for the sole purpose of seeking reimbursement from Neuropathy, and to foreclose Neuropathy from making arguments in favor of coverage in the MBIC Action. Such actions separately are independent, tortious breaches of the duty of good faith and fair dealing.

119.   Neuropathy further alleges on information and belief that MBIC's bad faith conduct includes, but is not limited to:

### Communication

- Failing to promptly disclose to Neuropathy all benefits and coverages under the Policy that may apply. Regulations §§ 2695.4(a) and (b).

- Misrepresenting coverage under the Policy so as to prevent Neuropathy from maximizing its potential for coverage. Regulations § 2695.4 and Insurance Code § 790.03(h)(1).

- Failing to promptly provide Neuropathy with a reasonable explanation, both factually and legally, as to MBIC's basis for failing to investigate Neuropathy's claims, refusing to pay Policy benefits and/or denying or approve Neuropathy's claims. Regulations § 2695(b)(1), Regulations § 2695.7(b)(1), and Insurance Code § 790.03(h)(13).

### Investigation

- Failing to promptly investigate the claims, and failing to effectuate prompt, fair and equitable settlements of the claims in which coverage

has become reasonably clear, and not seek reimbursement. Insurance Code § 790.03(h)(3),(4) and (5).

- Failing to investigate thoroughly all bases for the potential of coverage before denying benefits to Neuropathy. Regulations § 2695.5(g) and *Egan v. Mutual Omaha*, 24 Cal.3d 809, 817 (1979).

- Failing when investigating to "not just focus on those facts which justify denial of the claim." *Mariscal v. Old Republic Life*, 42 Cal.App.4th 1617, 1623 (1996).

### Coverage

- Failing to interpret its Policy provisions in a broad fashion so as to favor coverage, rather than to deny coverage. *Insurance Company of North America v. Sam Harris Construction*, 22 Cal.3d 409, 413 (1978).

- Failing to resolve all ambiguous language in favor of coverage. *Gray v. Zurich Insurance Company*, 65 Cal.2d 263, 274 (1966).

- Failing to interpret exclusions narrowly in favor of Neuropathy and liberally against MBIC. *State Farm Mutual Auto v. Jacober*, 10 Cal.3d 193, 207 (1973).

### Settlement

- Refusing to continue to defend Neuropathy in the *Bernal* action and unilaterally accepting the settlement for $2 million in the *Bernal* action.

- Failing to identify new information or evidence that MBIC discovered between February 25, 2021, and May 12, 2021, that changed MBIC's position in the *Bernal* action.

- Arguing that all claims, even those MBIC determined to be potentially covered, are not potentially covered

- Forcing Neuropathy to file suit to obtain the Policy benefits owed. Insurance Code § 790.03(h).

120. Neuropathy alleges on information and belief that MBIC breached the

24

duty of good faith and fair dealing by other acts or omissions of which Neuropathy is presently unaware.

121.   MBIC acted in bad faith with a conscious disregard of Neuropathy's rights and interests under the Policy. On information and belief, Neuropathy alleges that MBIC knew that the claims against Neuropathy in the *Bernal* action were covered under the Policy, and that a duty to defend existed. MBIC's officers and/or managing agents instructed its adjuster to deny Neuropathy's claim and decline to defend them in the *Bernal* action.

122.   Then on February 25, 2021, Defendant MBIC reversed its decision and agreed to defend Neuropathy under a reservation of rights.  Just over two months later, shortly into the deposition of Neuropathy's PMK, Defendant MBIC instructed its appointed counsel to halt the deposition, and to settle the claim for $2,000,000, with the knowledge and intent that MBIC would be seeking reimbursement of the settlement funds. These facts were concealed from Neuropathy until after the policy limits demand was accepted by MBIC's appointed counsel, as controlled by MBIC.

123.   MBIC failed to investigate after reversal, and therefore cannot rely on the reversal as evidence of its good faith. Defendant MBIC sought reimbursement based on an incomplete investigation focusing solely on facts that benefitted MBIC, in bad faith.

124.   MBIC acted willfully to deprive Neuropathy of insurance benefits in order to favor its own financial interests, and continues to do so. MBIC's conduct constitutes oppression, fraud or malice within the meaning of California Civil Code § 3294. Accordingly, Neuropathy seeks an award of punitive damages in an amount appropriate to punish and deter MBIC from continuing its bad faith conduct.

125.   MBIC's bad faith, malicious, oppressive and fraudulent conduct was committed by MBIC's officers or managing agents, who were responsible for supervision and operation, reports, communications and/or decisions. The misconduct of these managing agents and individuals was therefore undertaken on behalf of

MBIC. Neuropathy alleges on information and belief that MBIC had advance knowledge of the misconduct of these individuals, and that their actions and conduct were ratified, authorized, and approved by MBIC.

126.   As a direct result of MBIC's breach, Neuropathy suffered damages, including but not limited to unreimbursed investigation, expert and defense fees and costs; attorneys' fees and costs to recover Policy benefits; and other economic and consequential damages in excess of the district court's minimum diversity jurisdiction, including prejudgment interest and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Neuropathy prays for judgment against Defendant MBIC as follows:

On the First and Second Causes of Action for Breach of Contract:

1.   A determination and award of general damages consisting of all reasonable defense expenses and settlement expenses, incurred by Neuropathy in defense of the *Bernal* action, including for the adverse judgment and settlement of the *Bernal* action;

2.   All consequential damages resulting directly from Defendant's breaches of their obligations;

3.   Award of pre-judgment interest accruing from the date of each defense invoice and settlement payment at the statutory interest rate of 10% per annum;

4.   Award of costs of suit herein;

On the Third Cause of Action for Tortious Breach of the Duty of Good Faith and Fair Dealing:

5.   For general, special and incidental damages;

6.   For attorneys' fees incurred to obtain policy benefits;

7.   For punitive damages;

8.   For pre-judgment interest;

9.   For costs, and other damages;

<u>On all Causes of Action</u>:

10.   Other and further relief as this Court may deem just and proper.

Dated:       July 6, 2022                     **WINTHROP LAW GROUP, P.C.**

By: */s/ Reid A. Winthrop*
REID A. WINTHROP

Attorneys for Plaintiff Neuropathy
Solutions, Inc. dba Superior Health
Centers

# **DEMAND FOR JURY TRIAL**

Plaintiff Neuropathy Solutions, Inc. dba Superior Health Centers hereby demands trial by jury.


Dated: July 5, 2022                                    **WINTHROP LAW GROUP, P.C.**

By: */s/ Reid A. Winthrop*
REID A. WINTHROP

Attorneys for Plaintiff Neuropathy Solutions, Inc. dba Superior Health Centers